UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

CRIMINAL NO. 3:08CR134 DPJ-LRA

RICKEY LEE SCOTT                                                                                              DEFENDANT

ORDER

This criminal matter is before the Court on remand from the Fifth Circuit Court of Appeals to determine whether Defendant Rickey Lee Scott was seized prior to the discovery of incriminating evidence. Having fully considered the premises, the Court concludes that he was not.

I.   Facts and Procedural History

On January 27, 2008, law-enforcement officers in Jackson, Mississippi, received an anonymous tip that drugs were being sold at a specific address. The street itself was considered a high-crime area, and when the officers arrived at that address, they found a congregation of men standing around a car. The first officer to exit his vehicle, Detective Corliss Harris, described the scene as being consistent with drug activity. Detective Harris also testified that when he saw Scott, he was acting nervously and patting or adjusting his waistband before taking a few steps away. The officer told Scott that he did not have to leave and asked him to come back over. Scott immediately lifted his hands gesturing that he had done nothing wrong, thus revealing a .38 revolver tucked in his waistband. Having been previously convicted of at least one felony offense, Scott was arrested and later indicted.

Prior to entering a guilty plea, Scott moved the Court to suppress the handgun.  An evidentiary hearing followed on December 15, 2008, and the Court thereafter denied the motion.  Scott entered his plea of guilty, and the Court sentenced him to serve 180 months.

Scott then sought and was granted relief under 28 U.S.C. § 2255, after which he again moved to suppress the firearm.  That motion received a second evidentiary hearing on September 30, 2013, with the same result.  Scott then entered another guilty plea while reserving this issue for appeal, which he is now pursuing.  On April 30, 2015, the Fifth Circuit Court of Appeals remanded the case for "clarification on the question of whether the defendant was seized."  Opinion [113].  The Government thereafter filed a brief on May 4, 2015 [112], and Scott responded May 18, 2015 [114].  No reply followed.

II.     Analysis

Scott's post-remand submission states that the Court "came to the conclusion that the Defendant was seized" but found that reasonable suspicion existed "up until the point Officer Harris commanded the Defendant to return."  *See* Def.'s Resp. [114] at 1.  While the Court has great respect for Defense counsel, it takes issue with this characterization.

Starting with the statement that the Court found that Scott was seized, the Court clearly noted that it questioned whether he was ever detained.  Hr'g Tr. [108] at 30.  It then stated that there was "probably . . . a detention at the point when the officer asked the defendant to step back over."  *Id.* at 30–31.  But the Court never clearly ruled on the point—thus the remand.  Instead, the Court immediately turned to the reasonable-suspicion issue.  In all candor, the Court focused on reasonable-suspicion because neither party briefed the seizure issue before the evidentiary hearing.  After the evidence was received, the Government argued that the elicited facts failed to

even show a detention.  The Court was not prepared to consider the issue at that point.  Thus, the Court never attempted to analyze the seizure issue or consider the facts in light of the applicable law.

In addition, the Court did not find that Detective Harris "commanded" Scott to come back, as Scott now characterizes it.  Def.'s Resp. [114] at 2.  This is a key point for the issue on remand.  The Court found instead that after the officers arrived, Detective Harris told Scott, "You don't have to leave" before "asking him to step back over."  *See* Hr'g Tr. [108] at 32.  Scott almost immediately lifted his hands revealing the gun.  *Id.* at 32 33.  After that, Detective Harris naturally instructed Scott to put his hands on the car, the gun was removed, and Scott admitted being a convicted felon.  *See id.* at 5.[1]

Based on these fact findings, Scott was obviously seized by the end of the encounter.  But the question seems to be the point in time at which he was seized.  Having now been asked to more directly answer that question, and having received briefing on the issue, the Court will address it, starting with the applicable law.  *Cf. United States v. Mask*, 330 F.3d 330, 335 (5th Cir. 2003) ("[A] district court's seizure determination is not entitled to deference if it is influenced by an incorrect view of the law.").

To begin, "not all personal intercourse between policemen and citizens involves 'seizures' of persons." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).  "Moreover, characterizing every street encounter between a citizen and the police as a 'seizure,' . . . would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices.  The [United

---

[1]Though not relevant to the seizure issue, the Court would also dispute Scott's description of the reasonable-suspicion holding as being far too narrow.  *See* Def.'s Resp. [114] at 1.

States Supreme] Court has on other occasions referred to the acknowledged need for police questioning as a tool in the effective enforcement of the criminal laws." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).  Thus, "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place [or] by asking him if he is willing to answer some questions." *Florida v. Royer*, 460 U.S. 491, 497 (1983) (plurality opinion).  Finally, "the fact that the officers' conduct 'could be somewhat intimidating' does not mean a seizure has occurred." *United States v. Valdiosera-Godinez*, 932 F.2d 1093, 1099 (5th Cir. 1991) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 575 (1988)).

The circumstances that will constitute a seizure were well summarized by the Fifth Circuit Court of Appeals in *Mask*:

> A voluntary encounter between an officer and a citizen may ripen into a seizure, triggering the Fourth Amendment and requiring officers to be able to articulate reasonable suspicion or probable cause, "only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of [the] citizen." *Terry v. Ohio*, 392 U.S. 1, 19 (1968) . . .  The test provides that an individual has been seized for Fourth Amendment purposes "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  *Id.*

330 F.3d at 336 (alteration in original) (citations omitted).  The Court of Appeals then examined the non-exclusive factors for finding a seizure as articulated in *Mendenhall*:

> (1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) physical touching of the person of the citizen; and (4) the use of language or tone of voice indicating that compliance with an officer's request might be compelled.

*Mask*, 330 F.3d at 337 (citing *Mendenhall*, 446 U.S. at 554). Looking to these factors, the undersigned concludes that no seizure occurred until after Detective Harris saw Scott's gun in plain view.

Starting with the first two factors, there were five or six other officers present. All arrived in undercover vehicles and were dressed in tactical gear marked "police." But none of the officers drew their weapons, and only Detective Harris the first to exit his vehicle spoke to Scott before the gun was discovered. Similar to the situation in *Mask*, "[n]one of the officers, through their speech, actions, or position relative to [Scott], ever prevented him from walking away." *Id.* at 338 (citing *INS v. Delgado*, 466 U.S. 210, 212, 218 19 (1984) (finding no seizure when multiple uniformed police officers were stationed at exits to factory as officers interrogated workers); *United States v. Boone*, 67 F.3d 76, 78 (5th Cir. 1995) (noting, but deeming inconsequential, presence of at least four uniformed officers while the defendant was being questioned in bus terminal)); *see also United States v. Guevara*, 448 F. App'x 453, 455 56 (5th Cir. 2011) (per curiam) (finding no seizure despite presence of 12 officers, where only two spoke with the defendant and none brandished their weapons).

As for the last two factors touching and tone Detective Harris neither touched Scott nor physically impeded his movement in any way. Instead, when he saw Scott step away, he told him he did not have to leave and asked him to step back. He did not tell Scott he could not leave, and the Court concludes that neither Harris's language nor tone conveyed the need for compelled compliance. *See Florida v. Rodriguez*, 469 U.S. 1, 5 6 (1984) (per curiam) (recognizing that "[t]he initial contact between the officers and respondent, where they simply asked if he would step aside and talk with them, was clearly the sort of consensual encounter that implicates no

5

Fourth Amendment interest"); *United States v. Anthony*, 487 F. App'x 921, 922 (5th Cir. 2012) (per curiam) (finding no seizure when officers parked patrol unit perpendicular to the defendant's vehicle and ordered him "to stand in front of the police unit"); *Guevara*, 448 F. App'x at 456 (finding no seizure when police motioned the defendant into a store and stating, "[W]e need to talk"); *United States v. Simmons*, 918 F.2d 476, 479 80 (5th Cir. 1990) (holding that a reasonable person in the defendant's situation would not have believed his freedom was limited when agents approached him, identified themselves as law-enforcement officers, and requested to speak to him).

Scott contends, however, that Detective Harris said he would have followed Scott had Scott left. *See* Def.'s Resp. [114] at 3. Aside from the fact that Harris also said Scott was free to go, the issue lacks relevance because the rational-person test is objective. *See Mask*, 330 F.3d at 336 (holding that officer's subjective intent is not relevant); *see also Anthony*, 487 F. App'x at 922 (same). Scott similarly argues that he did not feel free to leave. Again, the test is objective. *Id*. But assuming Scott's reaction is probative of the language and tone Detective Harris used, the Court is still not convinced. The Court heard the live testimony and considered Harris's actual words. Just because Scott now argues that he believed he was detained does not mean that a reasonable person would reach that same conclusion.

III.   Conclusion

The Court finds Scott was not seized until after the gun had been observed.

**SO ORDERED AND ADJUDGED** this the 24th day of July, 2015.

s/ *Daniel P. Jordan III*<br>UNITED STATES DISTRICT JUDGE